# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

BELONGER CORPORATION, INC., and
UNITED STATES OF AMERICA
for the use and benefit of BELONGER
CORPORATION, INC.,

                Plaintiffs,

       v.                                Case No. 17-CV-714

BW CONTRACTING SERVICES, INC., et al.,

                Defendants.

## DECISION AND ORDER

### I.    Background

The United States Department of Veterans Affairs hired BW Contracting Services, Inc. to construct a medical center in Milwaukee. (ECF No. 32, ¶ 1.) BW obtained a performance bond and payment bond from Liberty Mutual Insurance Company. (ECF Nos. 29, ¶ 3; 32, ¶ 2.) By way of two subcontracts, BW hired Belonger Corporation, Inc. to perform certain heating, ventilation, and air conditioning (HVAC), plumbing, and medical gas work on the project. (ECF Nos. 29, ¶ 2; 32, ¶¶ 3-4.)

Belonger performed work under the subcontracts, and on February 29, 2016, it issued two invoices, one under each subcontract, seeking payment. (ECF No. 29, ¶¶ 5, 12.) On each invoice the "balance to finish" was "$0." (ECF No. 29, ¶¶ 7, 12 *see also* ECF Nos. 21-1 at 3, 21-2 at 3.) These invoices were neither paid nor approved by BW. (ECF No. 32, ¶ 14.)

On May 14, 2016, BW learned that a plumbing line installed by Belonger had become clogged by another subcontractor and needed to be replaced. (ECF No. 29, ¶ 18.) That same day Belonger's president sent an email to, among others, Daniel Scharf, BW's project manager for the project, stating:

> Ed contacted me stating that at Sims lab there is another back up in the sewer located in the 4" stack. My understanding is the VA already cut open the pipe and at first glance appears it is concrete/grout from other contractor. We will make the repair and inform you of the findings – however we need email acknowledgement that this additional work is authorized and a change order will be forthcoming between BW and Belonger.

(ECF No. 32, ¶ 15.) Scharf responded: "That is my understanding as well. Yes, please proceed with repair work on a T&M basis, and have your plumber get a sign-off from Dan Nelson as we go. A change order will be issued to compensate you for this time." (ECF No. 32, ¶ 16.) Belonger performed this work on May 19 and 20, 2016, and charged $3,708 for labor and $506.36 for materials. (ECF No. 29, ¶ 27.)

A few months later, on October 4, 2016, the Veterans Administration issued a "Warranty and Installation Defect Notification" to BW. (ECF No. 29, ¶ 45.) In it the

Veterans Administration reported that Belonger had cross-connected the hot water and chilled water returns in certain rooms, "contaminating the low temperature hot water system with glycol and the chilled water system for the entire hospital." (ECF No. 29, ¶ 46.) On October 10 and 11, 2016, Belonger fixed the problem (ECF No. 29, ¶ 49) and did not charge BW for its work (ECF No. 29, ¶ 52). As a result of the defective cross-connection, the Veterans Administration asserted a claim against BW of $297,286.40 for alleged damage to the building and its mechanical systems resulting from glycol contamination. (ECF No. 29, ¶ 51.)

On February 13, 2017, Belonger submitted a "Notice of Payment Bond Claim" to Liberty Mutual for payment under the payment bond for work performed under the subcontract for which it had not been paid. (ECF No. 29, ¶ 28.) On April 5, 2017, Belonger submitted a "Proof of Claim – Construction Contract" to Liberty Mutual. (ECF No. 29, ¶ 33.)

Belonger filed this lawsuit against BW on May 19, 2017, alleging that BW (and Liberty Mutual pursuant to the payment bond) owed it $25,059.56 for plumbing and $54,177.50 for the HVAC work, for a total of $79,237.06. (ECF No. 1, ¶ 27.) Belonger also seeks $7,864.35 relating to unpaid change orders. (ECF No. 1, ¶ 32.) Diversity of citizenship does not exist under 18 U.S.C. § 1332. (ECF No. 1, ¶¶ 5, 6.) Rather, this action is before the court pursuant to 18 U.S.C. § 1331 because, in addition to state law claims

for breach of contract and unjust enrichment, Belonger seeks payment pursuant to a bond under the Miller Act, 40 U.S.C. § 3131, *et seq*.

The defendants answered the complaint and alleged a counterclaim regarding damages they suffered as a result of Belonger having cross-connected the hot and chilled water returns. (ECF No. 14 at 6-9.) On November 2, 2017, the defendants moved for summary judgment on Belonger's claim under the Miller Act. They argue the court should dismiss the Miller Act claim and then decline to exercise supplemental jurisdiction over the remaining state law claims, *see* 28 U.S.C. § 1367(c)(3).

The defendants argue that Belonger's claim under the Miller Act is untimely because this action was not filed within one year of Belonger's last work under the subcontracts. *See* 40 U.S.C. § 3133(b)(4). According to the defendants, Belonger's work under the subcontracts was completed in February 2016. The work fixing the clogged pipe was repair work and did not extend the Miller Act's one-year statute of limitations. Therefore, the defendants ask that the court dismiss the Miller Act claim, decline to exercise supplemental jurisdiction over the remaining state law claims, and dismiss the case with leave for Belonger to file the action in state court.

Belonger contends that its work fixing the clogged pipe *was* work under the subcontracts. As a result, this action is timely.

All parties have consented to the full jurisdiction of a magistrate judge. (ECF Nos. 5, 13.)

4

## II. Summary Judgment Standard

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Factual disputes are 'material' only when they 'might affect the outcome of the suit under the governing law'" and "'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the [nonmovant].'" *Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 610 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The burden on the moving party may be discharged by demonstrating 'that there is an absence of evidence to support the nonmoving party's case.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and [in] opposition to the motion for summary judgment." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016).

## III. Analysis

"An action brought under [the Miller Act] must be brought no later than one year after the day on which the last of the labor was performed or material was supplied by the person bringing the action." 40 U.S.C. § 3133(b)(4). "The [Miller Act] is remedial and to be liberally construed, but the giving of notice and bringing of suit within the prescribed time is a condition precedent to the right to maintain the action." *United States use of Material Serv. Div. of Gen. Dynamics Corp. v. Home Indem. Co.*, 489 F.2d 1004,

1005 (7th Cir. 1973); *cf. Clifford F. MacEvoy Co. v. United States*, 322 U.S. 102, 107 (1944) ("The Miller Act … is highly remedial in nature. It is entitled to a liberal construction and application in order properly to effectuate the Congressional intent to protect those whose labor and materials go into public projects.").

Several courts (although not the Court of Appeals for the Seventh Circuit) have addressed the question of when the statute of limitations under the Miller Act begins to run—that is, what is "the day on which the last of the labor was performed or material was supplied," 40 U.S.C. § 3133(b)(4). The courts that have considered this question tend to agree that, once a subcontractor completes its work under the subcontract, repairs or corrections to that work do not fall within the meaning of "labor" or "materials" and, as such, do not extend the Miller Act's one-year statute of limitations. *See United States use of Magna Masonry, Inc. v. R.T. Woodfield, Inc.*, 709 F.2d 249, 251 (4th Cir. 1983) (quoting *United States ex rel. Noland v. Andrews*, 406 F.2d 790, 792 (4th Cir. 1969)); *see also United States ex rel. Interstate Mech. Contractors, Inc. v. Int'l Fid. Ins. Co.*, 200 F.3d 456, 459-60 (6th Cir. 2000) (citing *United States for the use of State Elec. Supply Co. v. Hesselden Constr. Co.*, 404 F.2d 774, 776 (10th Cir. 1968); *United States ex rel. Austin v. Western Elec. Co.*, 337 F.2d 568, 572 (9th Cir. 1964)); *United States v. Cont'l Ins. Co.*, 776 F.2d 962, 964 (11th Cir. 1985); *United States ex rel. PRN Assocs. v. K&S Enters.*, No. 1:04-cv-0470-DFH-JMS, 2007 U.S. Dist. LEXIS 22616, at *8-9 (S.D. Ind. Mar. 27, 2007); *see also cf. United States ex rel. Roach Concrete, Inc. v. Veteran Pac., JV*, 787 F. Supp. 2d 851, 857

(E.D. Wis. 2011) ("Post-completion work does not stay the one-year statute of limitations."); *but see Trinity Universal Ins. Co. v. Girdner*, 379 F.2d 317, 318 (5th Cir. 1967) (holding that the "last labor or materials" language is broad enough to include work performed upon the demand of the government to correct defects in the work as originally completed and, therefore, the replacement of previously-installed defective pipe insulation and replacement of seal in air conditioning unit extended statute of limitations).

For purposes of the defendants' motion the court accepts that, had it not been for the clogged pipe, Belonger's work under the subcontract would have been complete by the end of February 2016. The court also accepts that Belonger's work fixing the clogged sewer line was repair work—albeit work done to repair another contractor's mistake. Finally, the court accepts that the original subcontracts, as they were agreed to in January of 2014 (ECF No. 20-5), did not call for Belonger to replace a pipe that would be clogged by another subcontractor. *See United States v. Hartford Fire Ins. Co.*, No. 1:10cv1068, 2010 U.S. Dist. LEXIS 128024, at *9 (E.D. Va. Dec. 3, 2010) ("No original subcontract would call for a sidewalk to be built, dug up, and rebuilt. If a subcontract called for the building of a sidewalk, the only way it would also call for that sidewalk to be dug up and rebuilt would be under a warranty."). From the defendants' perspective, those facts settle the matter. (*See, e.g.*, ECF No. 34 at 8 ("The test is simply whether the

work was in the nature of a repair, and, if so, the action is barred.").) The court disagrees.

A genuine dispute of material fact exists as to whether an agreement existed between Belonger and BW to amend the subcontract to add the repair work to the scope of work under the subcontract. The email exchange between representatives of Belonger and BW suggests that Belonger performed the repair work in reliance on BW's assurance that it would issue a change order for the work. A change order is an amendment of the original contract. *See, e.g., United States v. MMR Corp.*, 954 F.2d 1040, 1043 (5th Cir. 1992) ("A change order is an adjustment to a contract that typically reflects additional and unforeseen labor or material costs."); *LBL Skysystems (USA), Inc. v. APG-America, Inc.*, 319 F. Supp. 2d 515, 521 n.3 (E.D. Pa. 2004) (quoting *Allied Fire & Safety Equipment Co., Inc. v. Dick Enterprises, Inc.*, 972 F. Supp. 922, 927 n. 5 (E.D. Pa. 1997)); *Travelers Cas. & Sur. Co. v. Dormitory Auth.*, 735 F. Supp. 2d 42, 53 n.10 (S.D.N.Y. 2010) ("[A] change order is a 'written authorization provided to a contractor approving a change from the original plans, specifications or other contract documents.' A change order often authorizes an increase or decrease in contractor compensation in accordance with the change in work."); *see also* 17A C.J.S. Contracts § 535 ("A 'change order' for a construction project is an agreement between parties that modifies or changes the original contract terms.") (quoting *Fru-Con/Fluor Daniel Joint Venture v. Corrigan Brothers, Inc.*, 154 S.W.3d 330 (Mo. Ct. App. E.D. 2004)). Consequently, there exists a factual and

legal question as to whether work done pursuant to a change order is work done pursuant to the original contract. Therefore, the defendants have failed to show that Belonger's repair work is necessarily not work under the subcontract.

The defendants note that BW never actually issued a change order. However, they have failed to show that a contractor can invoke the Miller Act's statute of limitations after assuring a subcontractor that the subcontract would be amended to include the additional work. At a minimum, questions exist as to whether the Miller Act's statute of limitations is subject to equitable tolling and, if so, whether equitable tolling is appropriate here.

The court acknowledges that in 1973 the Court of Appeals for the Seventh Circuit referred to the Miller Act's one-year deadline as "a condition precedent" and a "jurisdictional requirement." *United States use of Material Serv. Div. of Gen. Dynamics Corp. v. Home Indem. Co.*, 489 F.2d 1004, 1005, 1007 (7th Cir. 1973). The court has not addressed the question since. If that is still its view, then the Miller Act's statute of limitations would not be subject to equitable tolling. The year following the Seventh Circuit's decision in *General Dynamics* the Court of Appeals for the Ninth Circuit reached the same conclusion. *United States ex rel. Celanese Coatings Co. v. Gullard*, 504 F.2d 466, 468 (9th Cir. 1974). However, it overruled its decision in 2013 as "clearly irreconcilable with intervening higher authority," concluding that the Miller Act's statute of limitations was *not* a jurisdictional requirement. *United States ex rel. Air Control*

*Techs. v. Pre Con Indus.*, 720 F.3d 1174, 1178 (9th Cir. 2013) (discussing *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013); *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011); *Arbaugh v. Y&H Corporation*, 546 U.S. 500, 516 (2006)). Thus, it is unclear whether in this circuit the one-year deadline may be subject to equitable tolling.

Finally, even if the repair work was *not* done pursuant to the subcontract but was done pursuant to a new agreement, a question exists as to whether Belonger can assert a claim under the Miller Act for the repair work even if its claim for work under the subcontracts is barred as untimely. If so, although a bulk of Belonger's Miller Act claim would fail, a claim would remain under federal law sufficient to merit this court's jurisdiction.

In short, the defendants argument is that Belonger's work fixing the clogged pipe cannot be work under the original contract and cannot act to extend the statute of limitations because it is repair work. The court disagrees that the issue is as simple as framed by the defendants. Consequently, the court finds it must deny the defendants' motion for summary judgment.

**IT IS THEREFORE ORDERED** that BW Contracting Services, Inc. and Liberty Mutual Insurance Company's motion for summary judgment (ECF No. 24) is **denied**.

Dated at Milwaukee, Wisconsin this 1st day of February, 2018.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge